## JANICE RENWICK *v.* FRED RENWICK

[No. 190, September Term, 1974.]

* * *

## JANICE RENWICK *v.* FRED RENWICK

[No. 191, September Term, 1974.]

*Decided January 14, 1975.*

278

The cause was argued before POWERS, GILBERT and LOWE, JJ.

*Arnold H. Ripperger*, with whom were *Mary Ellen Brooke* and *Brooke & Ripperger* on the brief, for appellant — cross-appellee.

*Marvin I. Singer* for appellee — cross-appellant.

LOWE, J., delivered the opinion of the Court.

If the attainment of maturity is determined by age alone, Dr. and Mrs. Renwick had achieved that state when they were married in 1965 at the respective ages of 36 and 29. If education is a necessary ingredient, his Doctorate of Philosphy in Economics and her training as a nurse would seem to meet that criterion. Even if it were measured by one's position in life, Dr. Renwick's professorship of finance at New York University and Mrs. Renwick's position as instructor of nursing education would obviously meet the standard. If, however, maturity is determined by the ability to resolve differences, the Renwicks are found wanting. Four state courts during a four year period have been unable to help them resolve their differences, nor do we find ourselves able to complete the task.

## The Facts

After their marriage in 1965 the Renwicks resided in New Jersey where four children were born to them. Irreconcilable differences arose in 1970, and Dr. Renwick removed himself to Reno, Nevada, where he commenced divorce proceedings unilaterally on June 18, 1970. He received a decree on July 13, 1970.

Meanwhile, back in New Jersey, Mrs. Renwick discovered that her home was titled in Dr. Renwick's name alone, and he had transferred it to his brother. The brother promptly dispossessed both the wife and the children soon after she

filed suit for divorce, custody and support in May of 1970. Mrs. Renwick's New Jersey decree was not obtained until March 1, 1971 due to the inability to serve process upon Dr. Renwick who was still in Reno. Ultimately he was served in New York [1] where he had been reemployed following his return from Reno. Dr. Renwick did not appear, answer or specially appear to contest service. Neither did he apprise the New Jersey court of his Nevada decree. Mrs. Renwick's New Jersey decree awarded her custody of the children and provided for their support and alimony.

Dr. Renwick's Nevada decree included precious little support for the children and even that requirement was not fulfilled by him. Although reemployed by New York University, he decided to move to Charles County, Maryland where his mother and brother resided. Mrs. Renwick and her children moved to the Ohio home of her parents before finding the home there where she now resides.

In December of 1972 Dr. Renwick picked up the children and brought them to his home in Maryland for a period which he claimed his wife and he had agreed would be indefinite. Mrs. Renwick denied that allegation and stated that the visit was to be limited to the Christmas holidays. Mrs. Renwick's version is supported by her subsequent acts. When the children had not returned to her by the first of the new year, she immediately commenced efforts to obtain their return. Her initial efforts by telephone were to no avail. Knowing Dr. Renwick had renewed his position with New York University, she instituted Habeas Corpus

---

1. "Personal service or process upon the defendant beyond the limits of the state is a form of constructive service authorized in many jurisdictions by the statutes, which usually require that a copy of both the summons and complaint shall be delivered to the defendant, and prescribe the manner in which proof of service shall be made. Service in this manner, when authorized by statute, is usually equivalent to service by publication, and is sufficient to enter a decree granting a divorce, and a decree of divorce based upon this form of service has the same effect as if based upon any other form of constructive service. However, personal service outside the state is restricted to actions in rem, nor does it . . . confer jurisdiction on the court to render a personal money decree against the defendant unless the defendant is domiciled in the forum, when personal service in another state may give jurisdiction in personam." *Nelson on Divorce* (2nd ed.) § 23.16. *See also* Md. Rule 107 for Maryland's out-of-State personal service procedure.

proceedings in that jurisdiction. His assertion of a Maryland domicile terminated the New York proceedings. Mrs. Renwick then instituted dichotomized proceedings in the Circuit Court for Charles County, petitioning for issuance of a Habeas Corpus Writ on behalf of the children and for enforcement of the New Jersey support and alimony decree of March 1, 1971. Dr. Renwick responded by answer and a petition for custody, to vacate the New Jersey decree, and to enforce the Nevada decree.

The chancellor denied the Petition for Writ of Habeas Corpus on July 10, 1973, overruled Mrs. Renwick's Motion Raising Preliminary Objection to Dr. Renwick's Petition for Custody on August 6, 1973 and proceeded to hear testimony on the custody question. The chancellor's reasons for denying the preliminary petitions and concluding that the Charles County Circuit Court had jurisdiction to hear the custody question were rested upon Md. Code, Art. 16, § 66 (a) (now Courts Art. § 3-602).

In a written opinion dated August 29, 1973, the chancellor found as facts that:

1) Dr. Renwick "did not acquire a bona fide legal domicile in Nevada and that the Court there lacked jurisdiction to award him a legal divorce."

2) ". . . Mrs. Renwick was a legal resident of New Jersey when she filed suit and she and the children continued to reside there until several months after the decree was signed. Mr. Renwick was personally served with process although he chose not to appear. The New Jersey decree is therefore, valid as to divorce. It is also valid as to support payments and custody of the children, . . . ."

3) Having found custody jurisdiction here, the best interests of the children were found to be with Dr. Renwick to whom the chancellor awarded custody.

4) Back alimony and support were due Mrs. Renwick in the amount of $16,590.00.

5) The costs of the proceedings were to be paid by Dr. Renwick in addition to $700.00 toward Mrs. Renwick's counsel fees.

On December 6, 1973, pursuant to that opinion an Order was signed from which Mrs. Renwick appeals:

a) the denial of the Petition for Writ of Habeas Corpus and Motion Raising Preliminary Objection;

b) the award of custody of the children to Dr. Renwick; and

c) the amount of counsel fees and expenses awarded Mrs. Renwick.

A cross appeal by Dr. Renwick, on the other hand, questions:

1) the invalidation of the Nevada decree; and

2) the money judgment for child support and alimony.

While these conclude the questions to which we must respond in Appeal No. 190, Appeal No. 191 concerns the same parties and derivative issues. It arose from Mrs. Renwick having taken the children back to Ohio and keeping them there notwithstanding the Charles County decree. This refusal to conform to the custody decree caused her to be found in contempt of the Circuit Court for Charles County. Not having purged herself of that contempt, she was *inter alia* prohibited from undertaking to collect the pecuniary proceeds of the former decree by Order of March 1, 1974. She had undertaken to accomplish that purpose by proceedings begun in New York.

In reviewing a melange of jurisdictional, procedural and custodial issues such as these, appellate courts must apply differing standards:

"In our review *the clearly erroneous rule* [Md. Rule

1086] *applies to* the chancellor's factual findings. But for the reasons set out in *Sullivan v. Auslaender*, 12 Md. App. 1, *we must exercise our best judgment in determining whether the conclusion as to custody* the chancellor reached on those facts *was the best one*, best, that is, for the welfare, benefit and interest of the child." *Widdoes v. Widdoes*, 12 Md. App. 225, 233. [Emphasis added].

For reasons hereafter assigned we will have no need to exercise our "best judgment." We have concluded that factual findings of the chancellor deprived him of *in rem* custody jurisdiction and the absence of jurisdiction, in turn, nullified his conclusion that custody should be removed from the mother. Based upon the same factual findings, however, the money judgment stands, but on a different legal foundation since it is derived from the *in personam* support award made in New Jersey.

The factual gudgeon around which these jurisdictional questions turn is the finding by the chancellor that:

"Based on the evidence in the record . . . we hold that Mr. Renwick did not acquire a bona fide legal domicile in Nevada . . . ."

Seeing nothing in our review of the record to justify declaring that such finding is "clearly erroneous," Md. Rule 1086, we affirm the consequent holding that " . . . the Court there lacked jurisdiction to award him a legal divorce." *Naylor v. Naylor*, 217 Md. 615, 623. We must then answer three further jurisdictional questions:

1) whether the New Jersey decree was valid as applied to the divorce and custody proceeding;

2) whether the New Jersey decree was valid as applied to support and alimony; and

3) whether the Circuit Court for Charles County had jurisdiction.

## Divorce and Custody, *In Rem*

Although Mrs. Renwick filed suit in New Jersey in May of 1970, service of process on Dr. Renwick was not obtained until October 20, 1970. Process was personally served upon him in New York, following his return from Nevada. Having himself relied upon the contention that his Nevada decree, based on nothing more than his alleged domicile and constructive service of process, [2] was valid, Dr. Renwick is hard-pressed to protest that same reasoning when applied to the out-of-state service upon him. In any case, the New Jersey court is expressly given jurisdiction in divorce suits by statute when *either party* is a bona fide resident of New Jersey at the time the cause of action arose and has been such for two years preceding the commencement of the action. N.J. R.S. 2A:34-10. Mrs. Renwick more than fulfilled those criteria.

The validity of the divorce is actually incidental to our main concern, *viz.*, Mrs. Renwick's claim to custody under the New Jersey decree. We find both Maryland and New Jersey in accord with text writers that custody is in the nature of an *in rem* proceeding (*i.e.*, "status" of the child) and jurisdictional requirements are satisfied by the domicile of the children. *Seidlitz v. Seidlitz*, 23 Md. App. 327; *Edwards v. Edwards*, 8 N.J. Super. 547; *Nelson on Divorce* (2nd ed.) § 15.32, at 287.

Once again, relying on the findings of the chancellor, we are in accord with his conclusion that the New Jersey divorce decree and custody award to Mrs. Renwick were valid.

---

**2.** The rationale justifying constructive service in divorce actions is that divorce is an *in rem* proceeding affecting a status. In Lister v. Lister, 86 N.J. Eq. 30, the New Jersey court explained:

"A divorce suit is a 'suit in rem. . . .' [t]he essential characteristic . . . [of which] is to be found in the power of the state . . . to dispose of the subject matter of the suit . . . whether that subject matter be physical property or the status of one or both of the parties litigant."

## Support and Alimony, *In Personam*

Having accepted the chancellor's finding that Dr. Renwick was *not* domiciled in Nevada, there is no evidence that he was, during the crucial period, domiciled (as distinguished from residing) any place other than New Jersey. The short answer to the questioned money judgment deriving from the support and alimony provisions of the decree is that service by the New Jersey court on a domiciliary outside his domicile was obviously valid. *Nelson on Divorce*, (2nd ed.), § 23.16. However, we need not rely upon that rationale to uphold the support and alimony judgment.

We will assume arguendo that Dr. Renwick was when served a man without a domicile, a vagrant spouse, if you will. In permitting ourselves this assumption we specifically avoid deciding whether that status can indeed be validly attained. We further note that alimony and support are manifestations of the husband's common law liability to provide for his wife and children respectively. It follows then that alimony and support are actions *in personam* and, as such, require that a judgment against a non-resident defendant based only on constructive service be void. The traditional view, and the current Maryland rule, *McSherry v. McSherry*, 113 Md. 395, is that a non-resident defendant must be served *within* the territorial jurisdiction of the court, or appear personally or through counsel, in order for *in personam* jurisdiction to obtain.[3] The majority of states give continuing vitality to that concept, requiring presence or consent for the rendition of any judgment personally binding upon a litigant, the enforcement of which necessitates execution, attachment or contempt powers of the court. However, we are dealing with a New Jersey decree and its court has somewhat relaxed its service of process requirements in the domestic relations area.

---

3. See, however, Maryland's "long arm statute" in Courts Art. § 6-103, " . . . which was to give the courts of the State personal jurisdiction over all out of state persons and corporations which constitutionally could be reached as having had sufficient Maryland contacts under the jurisdictional yard stick established by the Supreme Court . . . ." *Gilliam v. Moog Industries, Inc.*, 239 Md. 107, 111.

The constitutional due process basis for the rigid personal-service-within-the-jurisdiction prerequisite, has during recent years been eroded by the Supreme Court,[4] most significantly in the landmark case of *International Shoe Co. v. Washington*, 326 U. S. 310. There the Court espoused what has become known as the "minimum contacts" theory:

> " ... due process requires only that in order to subject a defendant to a judgment in personam, if he be not present within the territory of the forum, he have certain *minimum contacts* with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.' " [Emphasis added].

The New Jersey Superior Court has analogized the logical underpinnings of *International Shoe* and its progeny to *in personam* actions for support, and extended the "minimum contacts" theory to hold that the "last matrimonial domicile" is the proper forum to litigate support, as well as divorce and custody:

> "The existence of a marital domicile in a state has as many consequences as economic activity does (McGee v. International Life Ins. Co., 355 U.S. 220) and should satisfy due process requirements so as to permit *in personam* jurisdiction for the award of alimony and child support against a vagrant spouse." [5] *Egbert v. Egbert*, 125 N.J. Super. 171.

We are, as a general principle, bound to "take judicial notice of the common law and statutes of every state," Courts Art.

---

4. The requirements were very early set forth in Pennoyer v. Neff, 95 U.S. 714. The expansion process is evident in International Shoe Co. v. Washington, 326 U. S. 310; Travelers Health Ass'n v. Virginia, 339 U. S. 643; McGee v. International Life Ins. Co., 355 U. S. 220, and Hanson v. Denckla, 357 U. S. 235; et al. Illustrative of the concept are the now common "long-arm statutes" throughout the country. *E.g.*, Courts Art. § 6-103.

5. The Court of Appeals has approved, as complying with due process, a New York *in personam* judgment based on constructive service, holding that the "minimum contacts" theory was not limited to the business sphere. Van Wagenberg v. Van Wagenberg, 241 Md. 154; and *infra*.

§ 10-501, and to give full faith and credit to the decrees of our sister states. Constitution of the United States, Art. IV, § 1.

However, in a suit to enforce a foreign judgment, the jurisdiction of the court which rendered it is open to judicial inquiry. *Adam v. Saenger*, 303 U. S. 59, 62. Where the question of fact or law on which jurisdiction depends was not litigated in the original suit, it is a matter to be adjudicated in the suit founded upon the judgment, *Adam v. Saenger, supra*. If the rendering court acted without jurisdiction, the full faith and credit clause does not operate and the foreign judgment is of no force and effect. *Williams v. North Carolina*, 325 U. S. 226; *Upham v. Upham*, 238 Md. 261.

Thus, in the present case, the enforceability in Maryland of accrued alimony and support payments under the New Jersey decree depends upon whether the substituted service on Mr. Renwick provided the court with jurisdiction over his person. In making that determination, we must decide 1) whether the New Jersey court complied with its own law regarding service of process, *Treinies v. Sunshine Mining Co.*, 308 U. S. 66, 77; *Van Wagenberg*, 241 Md. at 161; and if so, 2) whether the New Jersey law comported with due process.

When the New Jersey court first authorized substituted service in alimony and support actions, the court carefully reviewed statutory service of process requirements. Noting that there were no rules specifically dealing with alimony and support, the court turned to the rules generally governing civil practice:

> "Superior Court, R. 4:4-4 particularizes the methods of service to secure *in personam* jurisdiction over a defendant. By subparagraph (a) service of a summons and complaint shall be made on an individual by among other methods delivery of copies 'to him personally; or by leaving a copy thereof at his dwelling house or usual place of abode with a competent member of his family of

> the age of 14 years or over then residing therein.'
> This rule does not state that this service must be
> accomplished in this State nor that it cannot be
> served elsewhere than in this state." *Wright v.
> Wright*, 114 N.J. Super. 439.

Having concluded that there was no statutory bar, the *Wright* court authorized personal service in another state for an *in personam* alimony and support action where the defendant continued to maintain minimum business contacts with the state. In *Egbert v. Egbert*, 125 N.J. Super. 171, the court went even farther, holding that the fact that New Jersey was the "last matrimonial domicile" alone constituted sufficient "minimum contacts" to allow out-of-state service for an *in personam* judgment for alimony and support.[6] We hold that the personal service on Mr. Renwick in New York was in accordance with New Jersey law.

On the Constitutional question, we return to the Maryland courts and the United States Supreme Court for authority. The Court of Appeals has found constitutional a sister state's expansion of *in personam* out-of-state service beyond the business sphere and subject areas specifically delineated in the long-arm statute. *Van Wagenberg v. Van Wagenberg*, 241 Md. 154. That reasoning is equally applicable to the present case. As *International Shoe* makes clear, "fundamental fairness" is the touchstone. Here, Mr. and Mrs. Renwick had lived for several years in New Jersey and borne four children. Mr. Renwick knew his wife and children remained there without his support. He was personally served, though in New York, and thus had actual notice of the proceedings. We think the New Jersey court's action was fundamentally fair to Mr. Renwick. We hold that the New Jersey exercise of *in personam* jurisdiction complied with due process. The chancellor therefore

---

6. The New Jersey court has *judicially* expanded the availability of substituted service to *in personam* support actions; a similar rule has been codified in California and approved by its court as complying with due process. Soule v. Soule, 14 Cal. Rptr. 417.

correctly chose to enforce the support and alimony provisions of the New Jersey decree and properly entered a judgment against Dr. Renwick for $16,590.00.

## Maryland Jurisdiction

We now reach the most basic jurisdictional concern and that is whether the Circuit Court for Charles County has such jurisdiction as would enable it to review the custody award of the New Jersey decree. The chancellor relied solely upon Md. Code, Art. 16, § 66 (a); however, we fail to see how that section conferred jurisdiction.[7] Having determined that the custody of the children had properly been awarded the mother by the New Jersey decree, it is obvious that the domicile of the child is that of the parent with legal custody. *Miller v. Miller*, 247 Md. 358, 364, *viz.*, Janice Renwick, via the New Jersey decree.

We have held that to exercise the authority jurisdictionally conferred by Md. Code, Art. 16, § 66 (a) to modify a custody decree, a court must have jurisdiction over the children, *Seidlitz, supra*, quoting *Miller, supra*. However, that jurisdiction cannot be obtained by fraud or trickery in bringing the children into Maryland. *Cf. In Re Karol*, 11 Md. App. 400, 408-409 quoting *Margos v. Moroudas*, 184 Md. 362, 368-369, and 42 Am. Jur., *Process*, § 35 at 32. Indeed the Court of Appeals has gone so far as to cite with approval the domicile rule set forth in the Restatement, *Conflict of Laws*, § 117 "that a state court has jurisdiction to determine custody of a child *only* if the *domicile* of the child is within the state." [Emphasis added]. *Miller, supra*, at 362-363 citing *Zouck v. Zouck*, 204 Md. 285 and *Naylor v. Naylor*, 217 Md. 615. Whether or not actual domicile is a prerequisite, it is clear that "If the court does not have jurisdiction of the children it does not have jurisdiction . . . ." *Seidlitz, supra*, quoting with approval *Nelson on Divorce*, (2nd ed.), § 15.32, at 287.

---

7. The chancellor may have been misled by the succeeding subsection (b) now Courts Art. § 6-202 (5) relating to venue in custody cases.

In the instant case the chancellor found as a fact that:

" . . . Mr. Renwick [took the children] for a visit to his home in Pomfret, Maryland at Christmas 1972, *to be there with the agreement or understanding between him and his former wife that it was a Christmas visit and that it was not an indefinite stay.*" [Emphasis added].

It is obvious that the wrongful detention of the children over the months (and over the violent opposition and propitious and energetic efforts of the mother to obtain their return) could in no way provide the children "domicile" in Maryland, nor could that wrongful detention, an act amounting to fraud or trickery, provide a court of equity with custodial jurisdiction. We reverse the modification of custody for lack of jurisdiction and hold that the mother's custody may not be contested here under the circumstances shown.

## Appeal No. 191

Since Mrs. Renwick's petition for Writ of Habeas Corpus based upon wrongful detention of her children should have been granted, the contempt citation was erroneous as were its enforcement procedures enjoining her action to collect the judgment for alimony and support. The sanctions imposed for contempt were also founded upon the erroneous assumption of jurisdiction in the first instance. The contempt citation is reversed and the court below is directed to strike its injunction.

We hold, however, that the jurisdiction to obtain the money judgment was proper, founded as it was upon the valid New Jersey decree.

## Counsel Fees and Expenses

We have reviewed the record in regard to appellant's complaint of inadequate fees and expenses pursuant to the award authorized by Md. Code, Art. 16, § 5A. The record reveals evidence of respective incomes and assets as well as

needs. Considering the impending judgment for alimony and support we cannot say that the chancellor's award was clearly erroneous. Md. Rule 1086. *Peterman v. Peterman*, 14 Md. App. 310.

> *Appeal No. 190: judgment denying writ of habeas corpus and restraining appellant by order of July 10, 1973, reversed; judgment awarding custody to appellee by paragraph fourth rendered by decree dated December 6, 1973, reversed; judgment affirmed in all other respects.*
>
> *Appeal No. 191: contempt citation dated January 31, 1974 reversed; imposition of sanctions by order of February 13, 1974, reversed.*
>
> *Costs to be paid by appellee.*