LYNN A. FURMAN, FORMERLY LYNN A. GLADING
*v.* PETER T. GLADING

[No. 1192, September Term, 1976.]

*Decided June 15, 1977.*

The cause was argued before THOMPSON, POWERS and LOWE, JJ.

*Glenn M. Cooper,* with whom were *Ivan J. Shefferman* and *Shefferman, Paley & Rothman, Chartered* on the brief, for appellant.

*Jeffrey N. Greenblatt,* with whom were *Brodsky & Greenblatt* on the brief, for appellee.

LOWE, J., delivered the opinion of the Court.

In 1972 appellant Lynn A. Furman was divorced from appellee Peter T. Glading by the Circuit Court for Montgomery County, following proceedings in which the court obtained personal jurisdiction over both parties by virtue of their presence in this State. Custody of their then two-year-old daughter was awarded to Mrs. Furman, but the decree was silent as to child support. On June 17, 1976 Mrs. Furman petitioned the Circuit Court for Montgomery County to award her a reasonable sum for the child's support and maintenance. Mr. Glading, who had become a resident of Virginia, was served in that state with the petition and rule to show cause.

Mr. Glading challenged the jurisdiction of the circuit court over his person by motion raising preliminary objection, which motion was granted by order of October 8, 1976 dismissing Mrs. Furman's petition for child support. For reasons not revealed by the record, the court signed two additional but conflicting orders on October 22, 1976. One order denied Mrs. Furman's motion for reconsideration of the October 8, 1976 dismissal, and the other order granted that motion to reconsider and overruled Mr. Glading's motion raising preliminary objection. Recognizing this oversight, the court on November 8, 1976 passed an order pointing out the conflict and clarifying the situation by

1. denying Mrs. Furman's motion for reconsideration of Mr. Glading's motion raising preliminary objections, and
2. vacating the order of October 22, 1976 which overruled Mr. Glading's motion raising preliminary objections.

Mrs. Furman noted an appeal on November 10, 1976.

Taking advantage of these errors, Mr. Glading moved to dismiss Mrs. Furman's appeal on the ground that she was appealing the order of October 8, 1976 beyond the 30 days

permitted by Md. Rule 1012 a. We summarily denied the motion to dismiss.

Still seeking what advantage may be left to him arising from the chancellor's oversight, Mr. Glading now contends that this appeal may not reach the jurisdictional issue at the basis of the October 8, 1976 order dismissing Mrs. Furman's petition, but that appellant must address herself solely to the denial of her motion to reconsider that order. The reason for his contention is obvious. The denial of a motion to reconsider is an exercise of the chancellor's discretion. To emphasize the severity of the burden he imposes upon her, appellee quotes from *Zimmer v. Miller*, 64 Md. 296, 299:

> "There is, perhaps, no principle more firmly established by numerous decisions in this State than that there can be no appeal from the determination by a Court of equity of questions addressed to its sound discretion.",

and from *Carlile v. Two Guys*, 264 Md. 475, 477-478:

> "There is probably no principle of law that rests on more decisions of this Court than the concept that a trial judge's granting or refusing a new trial — fully, partially, conditionally, or otherwise — is not reviewable on appeal except under the most extraordinary or compelling circumstances. This is *true even though the trial judge's decision is based on mistake or erroneous conclusions of law or fact.* Our adherence to this rule is unwavering and we do not find any extraordinary or compelling circumstances in the present case which would permit a review. In fact, this Court, in its long history, has never found such circumstances to exist. (emphasis added)."

Even if we consider the language of *Zimmer* somewhat an overstatement of the burden, and note that *Carlile* dealt with a motion for a new trial rather than a motion to reconsider, the test appellant must meet is a severe one even in the eyes of a more contemporary Court of Appeals which

is not prone to overstatement. The granting or denial of a motion to reconsider an unenrolled judgment is within the discretion of the trial court, *Int'l-Indus. Developers v. Berg*, 269 Md. 250, 251, and while an appeal will lie from that determination, the lower court's decision will not be reversed unless it was an abuse of discretion. *J. B. Corporation v. Fowler*, 258 Md. 432.

Because the confusion (which resulted in the noting of the appeal two days beyond the original appeal period) was caused by the error of a court of conscience, it is as inconceivable that appellant's chance of success upon appeal should be reduced, as permitting such an error to preclude the right of appeal at all. We hold, therefore, that upon overruling appellee's motion raising preliminary objection and granting appellant's motion to reconsider on October 22, 1976, the court effectively struck out its order of October 8, 1976 dismissing appellant's petition after twelve days of appeal time had run. The dismissal order was no longer viable, and was reborn on November 8, 1976 when the October 22, 1976 order was vacated. The appeal time accordingly began to run again from November 8, 1976 when the court corrected its error. *Hess v. Chalmers*, 27 Md. App. 284, 288. The appeal was timely as to both orders.

The issue upon appeal was clearly set forth by the chancellor's ruling following the hearing on October 7, 1976:

"THE COURT: All right. I think probably the language in Renwick [*v. Renwick*], 24 Md. App. 277, at page 285 is controlling, where Judge Lowe said, 'We further note that alimony and support are manifestations of a husband's common law liability to provide for his wife and children respectively. It follows then that alimony and support are actions *in personam* and, as such, require that a judgment against a non-resident defendant based only on constructive service be void. The traditional view, and the current Maryland rule, *McSherry v. McSherry*, 113 Md. 395, is that a non-resident defendant must be served *within* the territorial

jurisdiction of the court, or appear personally or through counsel, in order for *in personam* jurisdiction to obtain.'

Inasmuch as he has not been served within the jurisdiction, I must conclude that the defendant's motion raising preliminary objections is well taken."

That ruling was correct as far as it went; however, there was an added element which the court claimed to have considered but which it did not address.

"MR. SHEFFERMAN [appellant's attorney]: May I say one other thing? Does the Court realize he [appellee] was served within this jurisdiction when the [divorce and custody] case started, this is a case of continuing jurisdiction?

THE COURT: Yes, sir."

We find that the chancellor erred. The case he relied upon, *Renwick v. Renwick, supra,* did not have before it the question of continuing jurisdiction following personal service within this jurisdiction. We hold that the parties, once having been subject to the court's jurisdiction for purposes of determining custody and child support under Md. Code, Art. 16, § 66 (now in pertinent part Md. Code, Cts. Art., § 3-602), remained subject to such jurisdiction for the purpose of modifying any decree or order which affected the child. *Berlin v. Berlin,* 239 Md. 52, 57.[1]

Appellee contends that in adopting the continuing jurisdiction theory (as applied to Md. Code, Art. 16, § 66), the Court of Appeals in *Berlin* did so within the restrictions comprehended by *McSherry v. McSherry,* 113 Md. 395. While recognizing the established law that alimony and support decrees were *in personam,* and that a non-resident must be served within the territorial jurisdiction of the court in order

---

1. But see Howard v. Gish, 36 Md. App. (1977) pointing out possible limitations placed upon the *Berlin* continuing jurisdiction rule by Maryland's adoption of the Uniform Child Custody Jurisdiction Act, Ch. 265, Laws of 1975, now codified in Md. Code, Art. 16, § 184-207.

for *in personam* jurisdiction to obtain, *McSherry* held that prior jurisdiction obtained by proper personal service could continue where the court reserved to itself in the decree, by agreement of counsel, the future determination of the amount of alimony and child support. *Id.* at 401.

Appellee further contends that because the Court of Appeals, by Md. Rule S72 c. 2., requires a reservation of jurisdiction where a divorce *a vinculo* follows an *a mensa* decree before *in personam* relief may be granted, the enaction of this rule (although restricted to converting an *a mensa* decree into an *a vinculo* decree by supplemental bill) somehow revives and enlarges the *McSherry* reservation principle. We read nothing into Rule S72 c. 2. beyond its expressly stated limitations.

Nor do we agree that *Berlin* was written within the strictures of *McSherry*. *McSherry* was decided June 22, 1910, prior to the enactment of Md. Code, Art. 16, § 66 by Ch. 573 of Laws 1920, and purported to answer only the single question before it without having to go beyond its precise holding. *Berlin*, on the other hand, was written in express contemplation of Md. Code, Art. 16, § 66 and stated that the adoption of the continuing jurisdiction rule was founded upon the theory of subsequent modification after custodial jurisdiction attached, whether that modification was authorized by the decree itself pursuant to *McSherry* or under the provisions of a statute:

> "The majority of courts in other states have adopted the continuing jurisdiction rule. We shall do likewise. The theory of this rule is that when a custody decree is subject to subsequent modification for any reason (either under the provisions of a statute or the terms of the decree itself), the jurisdiction of the court in the awarding state should remain notwithstanding the removal of the child to another state." *Berlin v. Berlin, supra,* 239 Md. at 57.

Whether that language is viewed as part of the holding of *Berlin* or as dicta, its breadth and clarity provide the

direction from the Court of Appeals in sufficiently strong language that we are compelled to follow it.

Md. Code, Art. 16, § 66, which gives equity courts the power to modify a decree with respect to custody and support of children, was the statute to which *Berlin* referred, and it is relied upon here by appellant. It read in pertinent part on December 21, 1972, when the lower court, having jurisdiction over both parties, granted custody to appellant in the divorce decree,[2] as follows:

> "The several equity courts of this State shall have original jurisdiction in all cases relating to the custody . . . of . . . children, and . . . the equity court may direct who shall have the custody or guardianship of such child or children and who shall be charged with his, her or their support and maintenance, pendente lite or permanently, and may, from time to time thereafter annul, vary or modify its decree or order in relation to such child or children . . . ."

It would be illogical to hold that the Court of Appeals, in construing that statute to provide continuing jurisdiction, meant it to permit subsequent modification only if the subject matter of the petition (a child of whom custody is sought) was out of the jurisdiction, but not if the person to be charged with the child's support is out of the jurisdiction. Not only would this dichotomy divest of meaning the Court's language explaining the theory of the continuing jurisdiction rule

> " . . . that when a custody decree is subject to subsequent modification for any reason . . . the jurisdiction . . . should remain . . .",

---

2. Appellee contends that because Md. Code, Cts. Art., § 3-602 (where the essence of Art. 16, § 66 is now found following revision by the Code Commission) is found in Title 3 of the Cts. Art., which deals generally with subject matter jurisdiction, rather than in Title 6 of the Cts. Art., which deals generally with personal jurisdiction, the Legislature intended § 3-602 to apply solely to subject matter jurisdiction. While we do not find that argument persuasive, we need not respond to it inasmuch as the jurisdiction which we hold to have been continuing attached under Md. Code, Art. 16 § 66.

but it would give the power to the court to modify in its decree as to "who shall be charged with . . . support and maintenance", but unless that individual has remained in the jurisdiction, no power to enforce it. In construing statutes we are admonished not to arrive at absurd results, *Fairchild v. Maritime Air Serv.*, 274 Md. 181, 186. Clearly the Court which so admonished would not have done so. Viewed thus, it is apparent that Md. Code, Art. 16, § 66 gives continuing personal as well as subject matter jurisdiction.

This holding seems so obvious it is but to "[add] water to the sea or [bring] a fagot to bright-burning Troy" that we buttress it by further distinguishing the *McSherry* "reserved power" argument. But we cannot overlook indicia of legislative intent. Not only must we assume that when enacting a jurisdictional statute dealing with custody and support decrees and their subsequent modification, the Legislature was cognizant of a father's common law liability for support of his child, *cf Renwick, supra,* 24 Md. App. at 285, we further note that that body reenforced the common law concept after it adopted Md. Code, Art. 16, § 66 by statutorily charging *both* parents with the support and care of their children, Md. Code, Art. 72A, §1. If we held with appellee that the Legislature intended to give equity courts continuing jurisdiction over only the subject matter, we would be saying in effect that the decree may be modified as to support *for* the child taken from the jurisdiction, but may not be modified *against* the parent who absconds from the jurisdiction. We do not conceive either the Legislature through Art. 16, § 66, or the Court of Appeals in *Berlin,* or by enacting Rule S72 c., to have thus limited the State's posture as *parens patriae* concerning its children's welfare. *Taylor v. Taylor,* 246 Md. 616, 621.

Our interpretation follows the view of the Restatement, *Conflict of Laws* 2d, § 26:

"§ 26. Continuance of Jurisdiction

If a state obtains judicial jurisdiction over a party to an action, the jurisdiction continues

> throughout all subsequent proceedings which arise out of the original cause of action. Reasonable notice and reasonable opportunity to be heard must be given the party at each new step in the proceeding."

See also Comment a. and Illustration 1 of § 26. It is also supported by the reasoning of other states with statutes similar to Art. 16, § 66. See, *e.g.*, *Sowell v. Sowell*, 493 S.W.2d 86 (Tenn.), following *Darty v. Darty*, 232 S.W.2d 59 (Tenn.); *Sewell v. Trimble*, 172 F. 2d 27 (D.C.), following *Elkins v. Elkins*, 299 F. 690 (D.C.); *Weddington v. Weddington*, 92 S.E.2d 71 (N.C.); *Washington v. Washington*, 329 P. 2d 115 (Calif.); see generally 71 A.L.R.2d 1370, 1400, *et seq.*

We, therefore, reverse the chancellor's judgment and vacate the order dated October 8, 1976 dismissing the petition and the order dated November 8, 1976 which revitalized the prior order.

> *Judgment reversed.*
> *Case remanded for further proceedings.*
> *Cost to be paid by appellee.*