875 A.2d 814

**Maxwell C. COHEN**

v.

**Stephanie E. COHEN.**

No. 1993, Sept. Term, 2004.

Court of Special Appeals of Maryland.

June 7, 2005.

---

600

Thomas McCarthy, Sr., Annapolis, for appellant.

Stephen P. Krohn (Krohn & Krissoff, PA, on brief), Annapolis, for appellee.

Panel SALMON, JAMES R., EYLER, CHARLES E. MOYLAN, JR. (Ret., Specially Assigned), JJ.

SALMON, J.

The Circuit Court for Anne Arundel County issued a Judgment of Absolute Divorce and ordered that, as a condition of having visitation with his child, Maxwell Cohen abstain from the use of alcohol and drugs. Additionally, he was required to pay $1,796 in monthly child support to Stephanie Cohen. On appeal, Mr. Cohen raises two questions:

1. Did the trial court err in conditioning [a]ppellant's custody rights on his abstention from alcohol?

2. Did the trial court err in its calculation of the parties' child support obligations?

## I. *FACTS*

Maxwell and Stephanie Cohen were married on August 17, 1999. Candace Lee Cohen was born of the marriage on March 29, 2000. The couple separated in the late summer of 2001.

The parties signed a marital settlement agreement on August 31, 2001, in which they agreed to share joint legal custody of Candace. The agreement provided, *inter alia:*

Husband agrees not to consume any alcoholic beverages or use any controlled substances within eight hours prior to a period of physical custody or during the time that the Child is in his physical care.

The agreement also provided that Mr. Cohen would pay $1,424 per month child support to his spouse.

Mrs. Cohen filed an Amended Compliant for Absolute Divorce in the Circuit Court for Anne Arundel County on October 31, 2003, alleging that the parties mutually and volun-

tarily separated on September 5, 2001, and that the separation had continued for more than one year. She asked for sole custody of Candace, alleging that circumstances had changed since the marital settlement agreement was signed and that, as a consequence, the custody and child support provisions set forth in that agreement were no longer in Candace's best interest.

Trial was held in July 2004. Mr. Cohen testified, without objection, that he had been arrested in April 2002 for operating a boat while intoxicated. He also admitted that he had been arrested in June 2001 for driving while under the influence of alcohol in the District of Columbia.[1] In addition, he testified that he had been arrested for possession of drug paraphernalia in June 1999. Moreover, according to a substance abuse assessment, which was introduced into evidence by appellant, Mr. Cohen was arrested for driving under the influence in 1997 and again in 1998.

On January 30, 2004, a court ordered drug test of Mr. Cohen's blood was positive for cocaine and morphine. At trial, Mr. Cohen attempted to explain the positive drug test by saying that he "inadvertently" ingested morphine because the Tylenol–3 he was taking for a herniated disk contained that substance. He did admit, however, that he used cocaine on two occasions in January 2004.

Mr. Cohen, a practicing attorney, testified that he continued to drink alcohol, albeit "in moderation," that he had not smoked marijuana for over two years, but that he has used cocaine periodically.

Mrs. Cohen testified that she had concerns about Mr. Cohen's drinking and substance abuse and its potential effect on the safety of their daughter. In her words:

My concerns are that Mr. Cohen has a drinking problem, I believe. He also has a substance abuse problem. He's been in treatment before, and I haven't seen it to help. Mr.

---

1. Mr. Cohen testified that the charge was *nolle prossed,* but his license was nevertheless suspended in the District of Columbia.

Cohen denies that he has a problem right now. He doesn't even recognize that he has any kind of substance abuse problem.

In addition, Mrs. Cohen testified that she witnessed her spouse drinking alcohol at a bar/restaurant in 2003 on a night when Mr. Cohen had left Candace in the care of a babysitter. Mr. Cohen was "extremely intoxicated" on that occasion—according to Mrs. Cohen.

A substance abuse assessor, Donna Traux, interviewed Mr. Cohen on February 27, 2004. She prepared a report based on that interview. Mr. Cohen told her (falsely) that he had not used any illegal substances for three years and only had arrests for driving under the influence of alcohol in 1997 and 1998. Mr. Cohen also told Ms. Traux that he had voluntarily enrolled in a treatment program administered by Dr. John McClanhan, which was to begin in March 2004. He said that "he planned to 'cut down or quit' using alcohol and 'would not use drugs.'" Based on her February 27, 2004, interview, Ms. Traux opined that Mr. Cohen had a "mild" potential for relapse or continued use.[2] In her report she recommended that Mr. Cohen undergo "outpatient treatment for a minimum of six months."

At trial, Ms. Traux was informed of Mr. Cohen's more recent alcohol-related arrests in 1999, 2001, and 2002, and his positive cocaine test taken one month prior to her assessment. She testified that this information "would suggest that maybe [he is a problem drinker], but it would not be conclusive. It is conclusive about cocaine, but not about alcohol." When asked if this new information would change her overall assessment, she said, "It would certainly change dimension five [relapse/continued use potential]. I don't think it would change my ultimate recommendation." She further testified that, based on this new information, she would probably change Mr.

---

2. Presumptively, her opinion concerning "potential for relapse" related to both alcohol and drug consumption.

Cohen's potential for relapse from "mild" to "moderate" or "severe."

The trial court judge said in his oral opinion:

[W]hat does give me concern, and I will state that concern, is that I feel Mr. Cohen candidly lacks sufficient insight into his problem.

\* \* \*

[Y]ou obviously should recognize the ramifications that drug abuse could have or should have, that it would indicate to me either a lack of control or a colossal lack of judgment that you would permit yourself at any point, ever, to come up with a positive for cocaine.

Alcohol we treat differently because we all have some tolerance for some level of alcohol ingestion and we all say, well, you know, if you are a social drinker it is okay, but if you abuse it, it is not okay. *But when somebody has a substance abuse problem, and I think you do, Mr. Cohen, then alcohol is just as much a substance to avoid as is cocaine or anything else.*

\* \* \*

And subject to the comments that I have made and subject to a condition or two that I am going to impose, I believe that the present arrangement is in the best interest of the child, and I believe that both legal custody and physical custody should remain as it is in the current arrangement.

\* \* \*

But more importantly, I am concerned that if you are impaired at all there is no way to predict, and I don't want to react to a situation. I want to . . . [be proactive]. I don't want to find out after the fact that you did something that causes injuries or risk to the child and then say, well, you shouldn't have done that.

So I don't think as a constitutional proposition, I can prohibit you from drinking just in terms of affecting your lifestyle, but I find in this case that if you drink you

represent a high probability that you will drink at the wrong time.

And your inhibitions will be affected, your judgment will be clouded, and if you choose to drink even—drink to excess on a Monday, that may have an effect on your ability to be a proper, fit parent on a Tuesday.

So it is going to be in my order that you are to abstain completely from alcohol and that you may not abuse any drugs, whether they be prescription drugs or any controlled dangerous substances, which you may not possess ... to any degree.

... I will place in my order that you are required to have random urinalysis. That must be at least every month.

(Emphasis added.) The court's judgment, insofar as it concerned alcohol and drugs, read:

**ORDERED,** that [d]efendant Maxwell C. Cohen shall abstain from the use of alcohol or the abuse of any prescription or non-prescription drugs and shall not be unlawfully in possession of any controlled dangerous substance (CDS); and it is further

**ORDERED,** that the [d]efendant Maxwell C. Cohen make arrangements to subject himself to monthly random urinalysis and shall make available to Stephanie Cohen the results of such urinalysis; and it is further

**ORDERED,** that a violation of the conditions set forth herein may constitute a change in circumstances....

Custody of Candace was divided as follows:

**ORDERED,** that the parties shall have Joint Legal Custody of their minor child Candace and it is further

**ORDERED,** that the Shared Physical Custody Schedule as described in the Marital Settlement Agreement [3] of the

---

3. The marital settlement agreement provides, in pertinent part:

[T]he primary residence of the Child shall be with Wife. Husband shall have the right to have the Child with him at all reasonable times, which shall include the right of Husband to have physical custody of the Child every Friday from after school or daycare until

parties shall be maintained and shall not be disturbed except by the consent of both parties . . .

\* \* \*

**ORDERED,** that the [d]efendant Maxwell C. Cohen shall pay to the [p]laintiff Stephanie Cohen Child Support in the amount of One Thousand, Seven Hundred and Ninety–Six Dollars ($1,796.00) commencing on the first day of August, 2004 and continuing on the first day of each month thereafter. . . .

Mr. Cohen filed a Motion to Alter and/or Amend Judgment on September 3, 2004, in which he asked, *inter alia,* that the court incorporate the marital settlement agreement into the judgment of divorce and strike the prohibition against his use of alcohol. The motion was denied on October 7, 2004.

## II.  DISCUSSION

### A.  Issue 1

Mr. Cohen contends that the trial court erred in conditioning his custody right on his abstention from alcohol. In support of that contention, he argues: (1) the alcohol restriction was not pled or otherwise asked for in any pleading filed by appellee; (2) there was no basis for the imposition of an alcohol restriction; and (3) the alcohol restriction was "not predicated upon any necessary circumstance."

In contrast to the position he takes on appeal, Mr. Cohen never complained in the circuit court that Mrs. Cohen had not properly asked in her pleadings that the court impose, as a condition to custody/visitation, that he completely abstain from alcohol. Appellant had ample opportunity to raise this issue when he filed his motion to alter or amend judgment and raised unrelated objections to the alcohol restriction.

6:00 p.m. Saturday returning Child to Wife, every Tuesday after school or daycare until Thursday morning returning child to school or daycare.

Maryland Rule 8–131(a) provides, in pertinent part, that except for issues of jurisdiction, an appellate court will not ordinarily "decide any other issue unless it plainly appears by the record to have been raised in or decided by the trial court." Because this pleading issue was not raised either at trial or in post-trial proceedings, or decided by the trial court, the issue has not been properly preserved for our review.

But, even if the issue had been raised below, no precedent or statute requires that a condition to child custody or visitation be prayed for by one of the litigants before the court can impose that condition. As will be shown *infra*, so long as it is in the child's best interest and there is sufficient evidence in the record to support the condition, the trial judge has broad discretion as to whether to impose that condition upon a parent's visitation/custody rights.

The trial judge found that "[t]he evidence establishes that the [appellant] abuses alcohol." Appellant contends that "[t]here is absolutely no evidence in the record to establish that [a]ppellant abuses, or has ever abused, alcohol." [4] Appellant goes on to assert, without any authority, that "alcohol abuse ... cannot be diagnosed by anyone other than a professional in the field." Additionally, appellant complains that "[t]he trial judge [in concluding that an alcohol restriction was needed] assumed medical and psychological principles and facts that were not presented at trial, and used these speculations as the basis for this judgment."

The following evidence was sufficient to support the court's conclusion that appellant abuses alcohol, *viz:* (1) he was arrested in 1997, 1998 and 2001 for driving a motor vehicle while under the influence of alcohol; (2) he signed an agreement in 2001 where he promised not to drink alcohol within eight hours of having custody or visitation with Candace; (3) he was arrested in April 2002 for operating a boat while

---

4. Appellant does not object to being required to submit to monthly, random urinalysis or being prohibited from using controlled dangerous substances.

intoxicated; (4) on a night that Mr. Cohen had custody of Candace, he was seen at a restaurant, without Candace, in an "extremely intoxicated" condition; (5) appellee opined that appellant had "a drinking problem"; (6) despite his numerous alcohol-related arrests, appellant lied about the dates and number of such arrests when he talked to Donna Traux; and (7) appellant continues to drink alcohol on a regular basis, despite the fact that he told Ms. Traux he planned to "cut down or quit" alcohol use.

Mr. Cohen stresses that Ms. Traux testified that she did not have any "understanding" from any source that "Mr. Cohen has been diagnosed as an alcohol addict." Ms. Traux did so testify. And, it is true that there was no expert testimony that appellant abused alcohol. But common sense teaches that lay persons are capable of accurately determining whether someone abuses alcohol. Spouses, children, and other close relatives or friends of alcoholics correctly make such assessments every day. Ofttimes, the only person unable to make the diagnosis is the alcoholic himself.

Mr. Cohen asserts that the trial judge did not limit his analysis to evidence presented in court and, instead, impermissibly relied on outside influences in his decision-making process. In particular, appellant complains about the following portion of the trial court's opinion:

> The [c]ourt is of the opinion that a person who has a substance abuse problem cannot selectively determine which substances he will stop altogether and which he will partake in on occasion. Substance abusers must abstain completely from all mind altering substances including alcohol, in order to resolve the problem.

Appellant also complains about the court's finding that he "is in denial regarding the nature and extent of his substance abuse problem and that ... causes his judgment to be adversely affected." According to appellant,

> there is absolutely no evidence of this position anywhere in the record. Counsel presented extensive expert evidence in the form of Ms. Traux's testimony and nothing therein supports, or even suggests, this position. If this conclusion

is not a part of the evidence presented, the trial court cannot employ it into its ruling. But that is exactly what the trial court has done in this case. This conclusion is not a part of the evidence, and therefore constitutes an outside influence prohibited by *Drolsum v. Luzuriaga.* Its use in this matter constitutes clear error on the part of the trial court.

Appellant quotes from the case of *Drolsum v. Luzuriaga,* 93 Md.App. 1, 13, 611 A.2d 116 (1992), as follows:

The fact finder's role, whether judge or jury, is to receive the facts and arguments as framed by counsel. The trier of fact must make its decisions based upon material presented in court, within rules of evidence and procedure. In jury trials, efforts are made to exclude outside influences and prejudicial evidence so that they do not affect the jury's judgment. These procedures are not used when a judge sits as the fact finder because of the presumption that a judge is able to exclude outside influences from his or her decision-making.

There were facts in the record, coupled with legitimate inferences that could be drawn from those facts, supporting the finding that appellant was "in denial" about the extent of his alcohol problem. After all, Mr. Cohen testified that he did not believe he had a problem with alcohol even after being arrested three times for driving an automobile while under the influence and one time for operating a boat while intoxicated.

There is a difference, which is overlooked by appellant, between a trial judge basing a decision on some extrinsic fact never introduced in evidence and a court drawing legitimate inferences from facts that were introduced. In this case, the judge had strong factual evidence showing that appellant had an addictive personality, *viz:* (1) appellant, a lawyer licensed in Maryland, was willing to risk his freedom and career by taking an illegal substance such as cocaine prior to a court-ordered drug test, and (2) he continued to drink alcohol despite repeated alcohol-related arrests. An experienced judge, such as the one who imposed the alcohol restriction in this case, does not need expert testimony in order to conclude,

based on the facts such as those just recited, that, for the safety of Candace, appellant should avoid all mind altering substances—including alcohol.

■ In a closely related argument, appellant contends that the trial court failed to establish that any circumstance existed that would require him to abstain from alcohol. In *Kennedy v. Kennedy*, 55 Md.App. 299, 309–10, 462 A.2d 1208 (1983), we held:

> The State may regulate this custodial relationship whenever necessary, *Townsend v. Townsend*, 205 Md. 591, 596, 109 A.2d 765 (1954), and virtually without limitation when children's welfare is at stake. *Furman v. Glading*, 36 Md.App. 574, 581, 374 A.2d 414 (1977); *aff'd.* 282 Md. 200, 383 A.2d 398 (1978); 67A C.J.S. Parent & Child § 16, p. 202 (1978). ... [T]he equity courts in Maryland have plenary authority to determine any question concerning the welfare of children within their jurisdiction....
>
> \* \* \*
>
> A chancellor may also, within the exercise of his discretion, impose such conditions upon the custodial and supporting parent as deemed necessary to promote the welfare of the children. *Kruse v. Kruse*, 179 Md. 657, 664, 22 A.2d 475 (1941) cited in 27B C.J.S. Divorce § 308, p. 441 (1959). *We will affirm the imposition of such a condition so long as the record contains adequate proof that the condition or requirement is reasonably related to the advancement of a child's best interests. Deckman v. Deckman*, 15 Md.App. 553, 568, 292 A.2d 112 (1972).

(Emphasis added.) *See also Roberts v. Roberts*, 35 Md.App. 497, 503, 371 A.2d 689 (1977) (holding that if sufficient evidence is presented, a chancellor's finding that the appellant had an "alcohol problem" will not be disturbed on appeal).

The evidence, taken in the light most favorable to appellee, showed that appellant was a problem drinker who could not control his alcohol consumption. Because Mr. Cohen was granted frequent access to the child, it could be concluded legitimately that alcohol consumption of any sort could have an adverse impact upon Candace.

For the foregoing reasons, we hold that the trial court's requirement that Mr. Cohen abstain from alcohol was reasonably related to advancing Candace's best interest.

### B. Issue 2

■ Mr. Cohen contends that the trial court erred in increasing child support from $1,424 to $1,796 per month because (1) no change in circumstances existed to justify an increase in child support, and (2) in determining the amount he should pay in child support, the court should have allowed him to deduct $40,000 per year from his income, which was the amount of appellant's annual 401k retirement contribution.

■ Mr. Cohen first argues that "Maryland law dictates that a child support award may be modified only if a change in circumstance is shown to have taken place." Based on that premise, he asserts that the court erred because Mrs. Cohen made no showing that a change of circumstance had occurred (since the parties entered into the marital settlement agreement) that would warrant an increase in support. While it is true that a *"child support award"* may not be modified absent a demonstration that there has been a material change in circumstances, here there was no "award" of child support prior to the court action at issue.

■ Section 12–104(a) of the Family Law Article of the Annotated Code of Maryland (2004 Repl.Vol.) states:

> The court may modify a child support *award* subsequent to the filing of a motion for modification and upon a showing of a material change of circumstance.

(Emphasis added.) The word "award" means: "[t]o grant by formal process or by judicial decree." BLACK'S LAW DICTIONARY 132 (7th Ed.1999). As can be seen, the necessity of showing a material change in circumstance does not apply when, as here, no pre-existing judicial decree exists.[5]

Mr. Cohen next argues:

---

5. A marital settlement agreement is not, of course, binding on a court when considering the appropriate amount of child support. *Walsh v.*

The trial court has awarded a monthly child support payment to the [a]ppellee based on criteria unfair and prejudicial to the [a]ppellant. The [a]ppellant is self-employed. The [a]ppellant contributes to a retirement plan using his income from his business. Appellant's 2003 tax return indicates total income of $272,347.00, less $40,000.00 paid towards his retirement account—for a remainder of $232,347.00. The trial court adopted the Child Support Worksheet prepared and submitted by [a]ppellee's counsel. Appellant's Monthly Actual Income Before Taxes, as reported on th[e] Child Support Worksheet, does not reflect payments he made to his retirement plan.

In calculating the [a]ppellee's Monthly Actual Income Before Taxes for the purposes of the Child Support Worksheet, [a]ppellee's counsel used a process different than the one applied to the [a]ppellant. The [a]ppellee works for the County government. *The Child Support Worksheet adopted by the trial court assigns the [a]ppellee a yearly salary of $33,924.00, without regard for any monies paid by her employer into her pension.* The double-standard applied and the resulting disparity are unfair and prejudicial to the [a]ppellant.

(References to record extract omitted.)(Emphasis added.)

This is an above-the-guidelines case because the combined income of the parents is more than two and one-half times higher than $120,000 per year, which is the highest category of income on the guideline chart. Under the child support guidelines set forth in Sections 12–201 through 12–204 of the Family Law Article, a judge is *not* permitted to deduct from a

---

*Walsh,* 333 Md. 492, 504, 635 A.2d 1340 (1994), *see also Stambaugh v. Child Support Enforcement Admin.,* 323 Md. 106, 111, 591 A.2d 501 (1991) ("Generally, the duty to support one's minor children may not be bargained away or waived.") (citations omitted); *Stancill v. Stancill,* 286 Md. 530, 535, 408 A.2d 1030 (1979) ([T]he Chancellor cannot be handcuffed in the exercise of his duty to act in the best interests of a child by any understanding between parents.) (citations omitted); *Shrivastava v. Mates,* 93 Md.App. 320, 327, 612 A.2d 313 (1992) ("The law and policy of this State is that the child's best interest is of paramount importance and cannot be altered by the parties.") (citations omitted).

parent's gross income the amount voluntarily contributed to a pension plan.

Mr. Cohen disagrees with the above analysis. He argues that

> [t]he Child Support Guidelines set forth by statute allow for the [a]ppellant to deduct retirement contributions. Maryland Code Annotated, Family Law, § 12–201(2) states that, in calculating actual income from self employment, one may deduct "ordinary and necessary expenses required to produce income." Appellant's argument is that the funding of a retirement plan is such an expense.

This contention is without merit because a contribution to one's personal retirement account plainly is not a *necessary* business expense. It is simply the result of a decision to make an investment and get a tax break. Business expenses are expenses incurred to earn money, not sums that a person chooses to put aside from his/her gross income for retirement.

In any event, appellant argues that in an above-the-guidelines case, such as this one, it was inequitable for the trial judge to disregard the fact that (1) Mrs. Cohen received a contribution to her pension plan by her employer, which is not reflected in her gross income, and (2) the trial judge in no way reduced Mr. Cohen's gross income (for purposes of calculating child support), despite the fact that he voluntarily contributed $40,000 annually to his 401(k) plan.

As pointed out by appellee, appellant failed to produce any evidence at trial to support the assertion that she received a contribution to her pension plan from her employer. And, quite obviously, if that premise fails, so does Mr. Cohen's entire argument.

Mrs. Cohen testified that she worked for the Anne Arundel County Board of Education and that she had a "403(b) [plan] and a pension through work." She did not say, however, that her employer contributed to her pension plan. An exhibit introduced into evidence reveals that Mrs. Cohen's 403(b) plan had a value of $4,500 and her pension was valued at $3,500. But no exhibit or other evidence indicated what, if any,

contribution was made by her employer to either the 403(b) plan or her pension.[6]

But even if appellant had produced evidence that some contribution by Mrs. Cohen's employer was made to her 403(b) plan or to her pension, we fail to see why it would be inequitable to fail to make the suggested $40,000 deduction from Mr. Cohen's gross income. Mr. Cohen earns more than eight times as much as appellee and the voluntary deduction he makes is more than appellee's entire yearly salary.[7] If such deductions were routinely allowed, an affluent parent could manipulate his or her gross income to the detriment of the child.

**JUDGMENT AFFIRMED; COSTS TO BE PAID BY APPELLANT.**

---

**6.** According to a publication by the Internal Revenue Service (IRS) found on its website:

Certain employers are allowed to have Internal Revenue Service (IRC) 403(b) Tax–Sheltered Annuity plans. You are allowed to have a 403(b) plan if you are:

● A public school, college or university ...

Basically, 403(b) plans are similar to 401(k) plans by for-profit entities.

The IRS website describing 401(k) plans, setting forth the essential requirement of such a plan, gives no indication that a contribution by one's employer to the plan is necessary.

**7.** If Mr. Cohen had been allowed to deduct $40,000 from his actual income, the respective incomes of the parties would have been 86.1% for Mr. Cohen and 13.9% for Mrs. Cohen. In comparison, under the trial court's calculations, Mr. Cohen's income was 88.1% and Mrs. Cohen's income was 11.9% of the couple's combined income.